UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JOSEPH URLACHER, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL J. ASTRUE, Commissioner of Social Security, <br><br> Defendant. | Case No. 3:09-cv-05786-BHS-KLS <br><br> REPORT AND RECOMMENDATION <br><br> Noted for April 1, 2011 |

Plaintiff has brought this matter for judicial review of defendant's denial of his application for disability insurance benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits be reversed and that this matter be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On November 3, 2006, plaintiff filed an application for disability insurance benefits, alleging disability as of December 9, 2002, due to back and leg problems, nerve damage to his right leg, re-occurring headaches, numbness in his right hand, high blood pressure, and high cholesterol. See Tr. 8, 87, 103. His application was denied upon initial administrative review

REPORT AND RECOMMENDATION - 1

and on reconsideration. See Tr. 8, 42, 49, 51, 54.  A hearing was held before an administrative law judge ("ALJ") on June 17, 2009, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See Tr. 8, 18-39.

On July 15, 2009, the ALJ issued a decision in which plaintiff was determined to be not disabled. See Tr. 8-17.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on October 20, 2009, making the ALJ's decision defendant's final decision. See Tr. 1; see also 20 C.F.R. § 404.981.  On December 21, 2009, plaintiff filed a complaint in this Court seeking judicial review of defendant's decision. See ECF #1-#3.  The administrative record was filed with the Court on May 3, 2010. See ECF #11.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues defendant's decision should be reversed and remanded to defendant for further administrative proceedings because the ALJ erred: (1) in assessing plaintiff's credibility; (2) in assessing his residual functional capacity; and (3) in finding him to be capable of performing other jobs existing in significant numbers in the national economy.  The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but, for the reasons set forth below, recommends that while the ALJ's decision should be reversed, this matter should be remanded to defendant for further administrative proceedings.  Although plaintiff has requested oral argument, the undersigned finds such argument to be unnecessary here.

## DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to

REPORT AND RECOMMENDATION - 2

support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985).  It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991).  If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.  The ALJ's Assessment of Plaintiff's Credibility and Residual Functional Capacity

In his decision, the ALJ found plaintiff had the residual functional capacity ("RFC"):

> **. . . to perform light work as defined in 20 CFR 404.1567(b) except he could only occasionally climb ramps or stairs, stoop, knee, crouch, or crawl.  He could not climb ladders, ropes or scaffolds.  He could not work with extreme cold, vibrations, machinery or heights.**

Tr. 14 (emphasis in original).  The reasons the ALJ gave for assessing plaintiff with this residual functional capacity read in relevant part as follows:

> The claimant testified that he had chronic pain that interfered with his ability to sit, stand or walk for prolonged periods.  He said that he had difficulty sleeping and that he rested a couple times a day.  I accept that he has chronic pain.  He has undergone three lumbar surgeries and has consistently reported chronic pain.  However, the evidence does not indicate that the claimant is so limited in his ability to sit, stand or walk, and his doctors have indicated that they thought he could work.
>
> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> In terms of the claimant's alleged inability to sit, stand or walk for more than ten minutes.  In November of 2004, Dr. [Arnel M.] Brion[, M.D., a treating physician,] suggested that the claimant could attend a [cooperative school work] program for 30 hours a week, suggesting that he thought that the claimant could sit long enough to participate in the program.  The claimant indicated an interest in training as a nuclear medical technician, a light job that

REPORT AND RECOMMENDATION - 3

would require standing and walking more than ten minutes at a time.  In 2005 Dr. [John M.] Blair[, M.D., also a treating physician,] indicated that the claimant could sit, stand and walk for six hours in an eight hour day and lift twenty-five pounds occasionally.  The physical capacities evaluation concluded that the claimant could perform a range of light work.  The claimant has participated in vocational retraining geared at training him for sedentary work, suggesting that he thought he could sit more than ten minutes. He also attended classes at the time of his date last insured,[1] an activity that requires sitting more than ten minutes at a time.  In April of 2007, Dr. [C. Stephen] Settle[, M.D., another treating physician,] indicated that the claimant was capable of light work (exhibit 7E, p.3).  In March of 2007 Dr. Settle certified that the claimant could perform work as an accounting clerk (exhibit 7E, p.l3).

While there have been times since his alleged onset [date of disability] through his date last insured that doctors thought he could not work, these were relatively short periods in which his doctors felt that he would likely improve after surgery or physical therapy.

In sum, the above residual functional capacity assessment is supported by the findings of the State Agency physicians and not inconsistent with the recommendations of the claimant's treating physicians and the claimant's own retraining pursuits.

Tr. 15.

If a disability determination "cannot be made on the basis of medical factors alone at step three of the [sequential disability] evaluation process,"[2] the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2.  A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or

---

[1] To be entitled to disability insurance benefits, plaintiff "must establish that [his] disability existed on or before" the date his insured status expired. [1] Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1998); see also Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1460 (9th Cir. 1995) (social security statutory scheme requires disability to be continuously disabling from time of onset during insured status to time of application for benefits, if individual applies for benefits for current disability after expiration of insured status).  In this case, plaintiff's date last insured was December 31, 2007. Tr. 10.  Therefore, to be entitled to disability insurance benefits, plaintiff must establish he was disabled prior to or as of that date. Tidwell, 161 F.3d at 601.

[2] Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920.  If the claimant is found disabled or not disabled at any particular step of that process, the disability determination is made at that step, and the sequential evaluation process ends. See id.

REPORT AND RECOMMENDATION - 4

she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

Questions concerning a claimant's credibility are solely within the control of the ALJ. See Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a

REPORT AND RECOMMENDATION - 5

whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

Plaintiff argues that in making the above findings, the ALJ improperly rejected both the objective medical evidence in the record and plaintiff's own testimony that was inconsistent with the sitting, standing, walking, lifting and carrying capabilities reflected in the residual functional capacity to perform light work. The undersigned agrees. First, the only reason the ALJ gave for finding plaintiff not credible in regard to his subjective complaints – particularly in regard to his alleged inability to sit, stand or walk for more than 10 minutes – was that they were inconsistent with the medical evidence in the record. See Tr. 15. But while it may be, as discussed in greater detail below, that the ALJ is ultimately correct as to the ability to sit, stand and/or walk, he could not reject plaintiff's complaints solely because they were "not supported by objective medical evidence." Orteza v. Shalala, 50 F.3d 748, 749-50 (9th Cir. 1995) (quoting Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir.1991) (*en banc*)) (emphasis added).

Second, as plaintiff points out, there are a number of medical opinions in the record that call into question the ALJ's light work RFC assessment, which the ALJ either did not properly evaluate or did not in fact address in his decision. For example, in early November 2004, Terry Mallory, A.R.N.P., one of plaintiff's treatment providers, reported that "[b]ecause of his residual

REPORT AND RECOMMENDATION - 6

pain his ability to sit [was] limited to one and a half hours max[imum]," and then went on to state that he needed "to be allowed to go to school at a slower pace, i.e., one five hour class a quarter ideally." Tr. 280.  As noted above, however, the ALJ assessed plaintiff with a residual functional capacity to perform light work as defined in 20. C.F.R. § 404.1567(b), which defines that level of work as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b) (emphasis added); see also Social Security Ruling ("SSR") 83-10 (full range of light work requires standing or walking, off and on, for total of approximately 6 hours of 8-hour workday).[3]  Accordingly, the limitations on the length of time plaintiff can sit or attend class, if adopted, could potentially limit his ability to perform light work.  Since the ALJ did not explain what weight if any he was giving this evidence,[4] and it constitutes significant probative evidence of plaintiff's ability to perform such work at least in terms of sitting ability,[5] the Court

---

[3] Plaintiff asserts defendant's definition of light work also requires the ability to sit or stand for two hours and up to six hours in an eight-hour workday.  However, plaintiff provides no legal citation for such a requirement.  Indeed, as noted above, the only requirement in terms of standing and walking is that the individual be able to perform "a good deal" of it, or "off and on, for a total of approximately 6 hours," with no further clarification provided for the phrase "off and on." Id. (emphasis added).  Nor is there any specific time requirement for sitting, other than that the person must be able to perform it "most of the time." Id.

[4] See 20 C.F.R. § 404.1513(d) (providing that evidence provided by medical sources other than licensed physicians or psychologists, such as nurse practitioners, may be used to establish severity of claimant's impairments and their effect on his or her ability to work); see also SSR 06-03p ("[o]pinions from these medical sources . . . are important and should be evaluated on key issues such as impairment severity and functional effects.").

[5] In regard to sitting and the definition of light work under 20 C.F.R. § 404.1567(b), there is medical evidence in the record that plaintiff is at least somewhat limited in terms of pushing and pulling of leg controls (see Tr. 307), albeit

REPORT AND RECOMMENDATION - 7

is unable to determine whether he in fact properly evaluated it.

Plaintiff also argues the ALJ improperly evaluated the functional assessment provided by Dr. Brion. Although the ALJ found the fact that Dr. Brion "suggested" plaintiff "could attend a [cooperative school work] program for 30 hours a week" indicated he thought plaintiff could "sit long enough to participate in [that] program," Dr. Brion also indicated he believed that plaintiff would need to "change positions frequently." Tr. 15, 268. The ALJ, however, did not address this latter limitation, nor did he appear to account for it in the residual functional capacity with which he assessed plaintiff. Certainly, such a limitation could potentially limit the range of light work plaintiff is able to perform.[6]

The ALJ's implied finding that the interest plaintiff had indicated he had in training as a nuclear medical technician suggested an ability to perform a job that requires an ability to stand and walk for more than 10 minutes at a time also is problematic. While plaintiff did express his interest in such work to Dr. Brion in early May 2005, if funding for retraining could be obtained (see Tr. 261), the Court agrees with plaintiff that a mere desire to return to work – even to work in a job that falls in the light category – does not necessarily equate with an ability to perform such work, although it may be indicative of a subjective belief in the ability to do so, assuming plaintiff was aware of all of the physical requirements of that work. As such, this too was not a

---

not with respect to pushing and pulling of arm controls. See 316-17, 361. In addition, the limitation on pushing and pulling of leg controls appears to be the minority view. See id.

[6] Plaintiff also points to a comment made by Dr. Brion in early December 2004, in which he stated he asked plaintiff "to withdraw his enrollment [from college] for January so" that they could "concentrate on his rehab[ilitation]." Tr. 267. But the Court does not find the ALJ necessarily erred in failing to mention this comment, given that Dr. Brion went on to state that he expected plaintiff "to do well in the next 3 months" and that he could "enroll for the spring quarter." Id.; see also Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (claimant has burden of proving he or she suffers from medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for continuous period of not less than twelve months). The same is true in regard to Dr. Blair's indication in early December 2005, that plaintiff was not yet released to work (see Tr. 355) – given that he stated in late October 2005, that plaintiff was "off work" only until January 1, 2006 (Tr. 344) – and to Dr. Blair's statements in late August 2006, late September 2006, and mid-October 2006, that he "should be considered to be off work until" October 1, 2006, November 1, 2006, and January 1, 2007, respectively. (Tr. 334-336).

REPORT AND RECOMMENDATION - 8

valid basis for finding plaintiff to be capable of performing light work.[7]

Plaintiff next argues the ALJ erred in rejecting his claim that he could only sit, stand and walk for 10 minutes at a time on the basis of the estimate of physical capacity form completed by Dr. Blair in late July 2005. Again, the Court agrees with plaintiff that while that form does show Dr. Blair believed plaintiff would be able to perform each task for three to six hours in an eight-hour workday, it provided no opinion or assessment as to plaintiff's ability to perform each such task at one time. See Tr. 364. Accordingly, while the ALJ may be correct that this form indicates plaintiff is capable of performing "a range of light work," it does not necessarily show that he is able to perform it at the level found by the ALJ. Tr. 14-15.

In addition, plaintiff argues the ALJ erred in failing to consider Dr. Blair's late September 2006 estimate of physical capacities form, in which he opined that plaintiff could sit, stand and walk each for one hour at a time, and could perform each such activity for a total of five hours in an eight-hour workday. See Tr. 360. While this estimate does call into question plaintiff's claim that he could sit, stand and walk for only 10 minutes at a time, it is not clear that it would permit the full range of light work in terms of these tasks as found by the ALJ. Once more, because the ALJ did not provide any analysis of Dr. Blair's assessment, the Court is unable to determine if he properly rejected it or even considered it at all in determining plaintiff's RFC. The same is true with respect to the physical capacity evaluation summary Dr. Blair provided in October 2006, in which he agreed with a physical therapist's determination that plaintiff:

- Could perform within the "LIGHT range in an 8 hour day on a full-time basis";

---

[7] In addition, the mere fact that plaintiff has "participated in vocational training geared at training him for sedentary work" (Tr. 15 (emphasis added)), does not necessarily indicate or suggest he can sit more than 10 minutes at a time, let alone for the length of time that may be required of him given the ALJ's assessment of his RFC. Nor did the ALJ point to any evidence in the record that plaintiff actually successfully completed such training, or that such training would allow him to in fact transfer to an actual work setting.

REPORT AND RECOMMENDATION - 9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

- Sit, stand and walk each for "up to 20 minutes at a time without restriction";

- Sit, stand and walk each for "up to 2.5 hours in an 8 hour day"; and

- "Alternatively sit/stand/walk for 2 hours at a time; 8 hours in an 8 hour day."

Tr. 307 (emphasis in original).  Again, although these findings do appear to contradict plaintiff's alleged limitations regarding sitting, standing and walking at one time, it is not entirely clear they support the level of ability to perform light work found by the ALJ.

Plaintiff further takes issue with the ALJ's reliance on Dr. Settle's opinion in early April 2007, that he could perform light work and the job of accounting clerk. See Tr. 15.  Specifically, plaintiff asserts the ALJ could not do so, because there is no indication in the form completed by Dr. Settle, as what he could do in regard to the ability to sit, stand and walk.  The Court does find that because of this absence (see Tr. 133-34), it is not at all clear plaintiff is able to perform light work as found by the ALJ.  For the same reason, though, because Dr. Settle also did not indicate what the restrictions were in checking a box on that form indicating plaintiff was not released to work without restrictions (see Tr. 134), this does not necessarily contradict the ALJ's findings, as Dr. Settle could merely mean thereby that plaintiff was restricted to light work.

Plaintiff argues as well that the ALJ's reliance on the accounting clerk certification is not valid, as the record shows Dr. Settle indicated plaintiff could not sit for prolonged periods.  The Court finds that this does at least call into some question Dr. Settle's certification here, since Dr. Settle did opine in late March 2007, that "[p]rolonged sitting, especially in a vibrating car, will likely aggravate is back pain and probably cause a flare-up which potentially could interfere with his ability to complete" his school program. Tr. 494.  Given that the job of accounting clerk was defined as being sedentary in nature, it is unclear whether Dr. Settle really believed plaintiff was capable of performing it, particularly in light of the fact that he qualified his certification for that

REPORT AND RECOMMENDATION - 10

job by stating plaintiff would "need permanent ergonomic modification" to do so. Tr. 144. Thus, here too the ALJ erred.

Lastly, plaintiff argues the ALJ erred in concluding he could perform light work, because light work, as noted above, also requires the ability to lift "no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds," whereas the record contains a number of medical source opinions indicating plaintiff cannot do this. For example, in regard to Dr. Settle's early April 2007 light work opinion, the form he completed defined light work to mean working with less than and up to 20 pounds of weight occasionally and less than and up to 10 pounds of weight frequently. See Tr. 134; see also Tr. 677. Other medical source opinions also appear to limit plaintiff to lifting and/or carrying less than what the ability to perform light work would require. See Tr. 307, 311, 361, 364; but see Tr. 308, 316. This provides additional evidence, therefore, that the ALJ's RFC assessment is not fully supported.

II.     The ALJ's Findings at Step Five

If a claimant cannot perform his or her past relevant work, at step five of the disability evaluation process the ALJ must show there are a significant number of jobs in the national economy the claimant is able to do. See Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999); 20 C.F.R. § 404.1520(d), (e). The ALJ can do this through the testimony of a vocational expert or by reference to defendant's Medical-Vocational Guidelines. Tackett, 180 F.3d at 1100-1101; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2000).

An ALJ's findings will be upheld if the weight of the medical evidence supports the hypothetical posed by the ALJ. See Martinez v. Heckler, 807 F.2d 771, 774 (9th Cir. 1987); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). The vocational expert's testimony therefore must be reliable in light of the medical evidence to qualify as substantial evidence. See

Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  Accordingly, the ALJ's description of the claimant's disability "must be accurate, detailed, and supported by the medical record." Id. (citations omitted).  The ALJ, however, may omit from that description those limitations he or she finds do not exist. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

At the hearing, the ALJ posed a hypothetical question to the vocational expert containing substantially the same limitations as were included in the ALJ's RFC assessment. See Tr. 36.  In response thereto, the vocational expert testified that an individual with those limitations, and who had the same age, education and work background as plaintiff, was capable of performing other jobs. See Tr. 35-37.  Based on the above RFC assessment and the vocational expert's testimony, the ALJ found plaintiff to be capable of performing other jobs existing in significant numbers in the national economy. See Tr. 16-17.

Plaintiff argues the ALJ's step five determination here is not supported by the substantial evidence in the record, in light of the ALJ's errors in evaluating the objective medical evidence and in assessing his residual functional capacity.  The Court agrees.  As discussed above, there is a fair amount of objective medical evidence in the record that plaintiff is not able to perform the range of light work determined by the ALJ.  Two of the jobs identified by the vocational expert and adopted by the ALJ, furthermore, would appear to require the ability to perform work in that range. See Tr. 17, 36-37; see also Dictionary of Occupational Titles ("DOT") 706.684-022, 1991 WL 679050, and 211.462-010, 1991 WL 671840.  Accordingly, it is not at all clear that plaintiff would be able to perform either of these two jobs given the ALJ's errors.

Although the third job identified by the vocational expert would appear to be performed at the sedentary level (see DOT 739.687-182, 1991 WL 680217), as pointed out by plaintiff it is an unskilled job, and such jobs "are particularly structured so that a person cannot ordinarily sit

REPORT AND RECOMMENDATION - 12

or stand at will."[8] SSR 83-12, 1983 WL 31253 *4.  Again, as discussed above, there is at least some medical evidence in the record indicating a need to change positions frequently, equating potentially to the need for a "sit or stand at will" option.  On this basis, therefore, it also is not at all clear that plaintiff could perform this third job.

III.    This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292.  Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).  Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001).  Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002).

---

[8] The job of table worker described in DOT 739.687-182 is defined as requiring a "specific vocational preparation" or "SVP" of 2 ("Anything beyond short demonstration up to and including 1 month."). 1991 WL 680217.  An SVP of 2 corresponds to unskilled work. See SSR 00-4p, 2000 WL 1898704 *3.  As the other two jobs identified by the vocational expert are defined by the DOT as requiring an SVP of 2, and therefore are considered to be unskilled jobs as well (see DOT 706.684-022 (small products assembler I), 1991 WL 679050, and DOT 211.462-010 (cashier II), 1991 WL 671840), a need to change positions frequently, or sit or stand at will, would appear to preclude these jobs on this basis as well.

REPORT AND RECOMMENDATION - 13

Because issues still remain with respect to the medical evidence in the record, plaintiff's residual functional capacity and her ability to perform other jobs existing in significant numbers in the national economy, this matter should be remanded to defendant to conduct further administrative proceedings.

## CONCLUSION

Based on the foregoing discussion, the Court should find the ALJ improperly concluded plaintiff was not disabled. Accordingly, the Court also should reverse the ALJ's decision and remand this matter to defendant to conduct further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **April 1, 2011**, as noted in the caption.

DATED this 14th day of March, 2011.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 14